IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARY BALES                                                                    PLAINTIFF

             v.                            CIVIL NO. 5:18-CV-5113

NANCY A. BERRYHILL, [1] Acting Commissioner,
Social Security Administration                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Mary Bales, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

## I.       Procedural Background:

Plaintiff protectively filed her current application for DIB on June 28, 2016, alleging an inability to work since July 23, 2015, due to the following: bipolar disorder, anxiety disorder, major depression disorder, attention deficit hyperactivity disorder (ADHD), and Prinzmetal's angina. (Tr. 61-62, 76-77). For DIB purposes, Plaintiff maintained insured status through December 31, 2020. (Tr. 61, 76). An administrative hearing was held on July 25, 2017. (Tr. 34). Plaintiff and her counsel were present, and Plaintiff testified. (Tr. 36-54).

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Debra Steele, Vocational Expert (VE), was also present and testified. (Tr. 54-58). The ALJ issued a written opinion dated November 2, 2017, where she found that the Plaintiff had the following severe impairments: Prinzmetal's angina; brain hyperintensities otherwise nonspecific, likely chronic small vessel ischemic changes; tremors; major depressive disorder; history of bipolar disorder; generalized anxiety disorder; attention deficit hyperactivity disorder; and cluster B personality traits. (Tr. 18). However, after reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), except for the following:

> [N]o hazards such as unprotected heights or moving machinery; can climb ramps and stairs, but no ladders, ropes, or scaffolds; frequently, but not constantly handle bilaterally and no limitations on fingering bilaterally; can understand, remember, carry out simple instructions and tasks; can regulate emotions, control behavior, and maintain well-being in a work setting with simple tasks and instructions, as long as there are no fast paced production requirements, so no production rate pace work such as assembly line work; can learn, recall, and use simple instructions and tasks that involve simple work-related decisions with few, if any, workplace changes or changes in routine; jobs that involve working with the same types of things on a day to day basis; and can interact frequently with supervisors, occasionally with coworkers, but interaction with the public should be only incidental to the work performed; should work with things rather than people.

(Tr. 20). With the help of VE testimony, the ALJ determined that although Plaintiff was unable to perform any of her past relevant work, based on the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy that Plaintiff could perform, such as a housekeeping cleaner and an apparel stock checker. (Tr. 27). Ultimately,

the ALJ concluded that the Plaintiff had not been under a disability within the meaning of the Social Security Act at any time from July 23, 2015, the alleged onset date, through the date of the decision.  (Tr. 28).

Subsequently, Plaintiff requested a review of the hearing decision by the Appeals Council, and that request was denied on May 3, 2018.  (Tr. 1-6).  Plaintiff filed a Petition for Judicial Review of the matter on June 18, 2018.  (Doc. 1).  Both parties have submitted briefs, and this case is before the undersigned for report and recommendation.  (Docs. 11, 12).

The Court has reviewed the transcript in its entirety.  The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.    Evidence Submitted:

Plaintiff was born on January 9, 1970.  (Tr. 60, 61, 75, 76). At the hearing before the ALJ on July 25, 2017, testimony showed that Plaintiff's past relevant work consisted of work as an insurance claims analyst, a receptionist, and a veterinary technician.  (Tr. 43-44, 54).

Prior to the relevant time period, medical records showed that Plaintiff was treated for chest pain, bipolar disorder, anxiety, hyperlipidemia, and bronchitis.  (Tr. 386, 417, 419, 447). Plaintiff also underwent a left heart catheterization, left ventricular angiogram, and coronary angiogram, which showed one-vessel coronary artery disease with significant vasospasm in the right coronary artery, no mitral regurgitation, and normal LV size, function.  (Tr. 392). Medical records showed that Plaintiff was a smoker and was counseled on smoking cessation. (Tr. 386, 394, 448).

During the relevant time period, medical records showed that on July 22, 2015, Plaintiff saw Dr. Bruce DeYoung for her depressed mood, difficulty concentrating, difficulty falling asleep, difficulty staying asleep, excessive worry, fatigue, and restlessness. (Tr. 415). Plaintiff was assessed with obesity, anxiety and chest pain. Her EKG was normal, so Dr. DeYoung treated the anxiety. He also suggested she stay off work until after next follow up to see if FMLA was needed. (Tr. 446).

On July 27, 2015, Plaintiff saw Dr. DeYoung for a follow up on her anxiety. (Tr. 413). Plaintiff reported difficulty falling asleep and excessive worry. She also reported that Clonazepam was improving her symptoms. (Tr. 413). She was assessed with obesity and anxiety and told to remain off work for three weeks while she sought another job. (Tr. 441).

On August 14, 2015, Plaintiff saw Dr. DeYoung for complaints of anxiety. Plaintiff wanted to discuss a referral to psychiatry and short-term disability as she was bipolar and was experiencing manic episodes and deep depression. (Tr. 412). She was assessed with anxiety and bipolar disorder, and she was referred to psychiatry. (Tr. 438).

On August 31, 2015, Plaintiff underwent a psychiatric examination by Dr. Lance Foster at Northwest Arkansas Psychiatry. (Tr. 465). During the examination, Plaintiff reported that she had suffered from anxiety symptoms for over a year and had been diagnosed with bipolar disorder ten years ago. (Tr. 465). Plaintiff reported that her anxiety worsened with work, going to Walmart, and by being around too many people. (Tr. 465). Plaintiff stated that she had been diagnosed with Prinzmetal's angina and had frequent chest pain related to her anxiety. Plaintiff stated that she had good results from nitroglycerin and Xanax. (Tr. 465). Lastly, Plaintiff reported having the following symptoms: difficulty concentrating, shaking

4

constantly, feelings of panic, racing heart, dizziness, restlessness, and worthlessness. (Tr. 465). Plaintiff did not report any inpatient treatment, but rather treatment by Dr. DeYoung and her primary care physician. (Tr. 466). Plaintiff reported that she was working for Washington Regional Hospital as a claims analyst and was on medical leave related to her anxiety and Prinzemtal's angina. (Tr. 467). She also reported that her social activities consisted of going to her son's softball games and spending time with her spouse, son and in-laws. (Tr. 467). Dr. Foster diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder. (Tr. 467). Dr. Foster notes that Plaintiff was willing to attend therapy, that he discussed the benefits and risks of her medication regime, and that she should follow up with him in two weeks. (tr. 469).

On September 21, 2015, Plaintiff had a follow up visit with Dr. Foster. (Tr. 471). Plaintiff reported that the Celexa did not help her and that her concentrating and shaking was worse on the medication. (Tr. 471). She also reported feeling panicky, along with a racing heart, feelings of dizziness, feelings of worthlessness, restlessness, and chest pain. (Tr. 471). Dr. Foster diagnosed her with major depressive disorder, generalized anxiety disorder, and an Axis II diagnosis of cluster B personality traits. (Tr. 472). Dr. Foster discussed different medications and psychotherapy with her. Plaintiff was to return in three to four weeks and was to remain off work during that time. (Tr. 473).

On October 13, 2015, Plaintiff had a follow up visit with Dr. Foster for a medication check. (Tr. 476). Plaintiff reported that she had been on a trip to visit a sick family member and had experienced increased anxiety since then. Plaintiff stated that as long as she stayed home, she was motivated to cook, pay bills, and other activities of daily living. If she left the house, she had increased anxiety. (Tr. 476). Plaintiff told Dr. Foster that therapy was not

5

something she wanted to do at the time. (Tr. 476). Plaintiff's medication was adjusted, and she was encouraged to consider therapy. (Tr. 478).

On October 23, 2015, Plaintiff saw Dr. DeYoung for her anxiety. At that visit, Plaintiff reported that functioning was very difficult, that her anxiety was aggravated by conflict or stress, and that she was unable to leave her home without an anxiety attack. (Tr. 410). Clinic notes indicated that her anxiety was associated with trembling, that she had a fair response to medication, but that she continued to shake and have chest pains due to anxiety. (Tr. 410). For her tremors, Dr. DeYoung referred her to neurology. (Tr. 410).

Plaintiff returned to see Dr. Foster on November 3, 2015, and reported that she was still having tremors, despite her medication. (Tr. 481). She also reported that she lost her job due to absences. (Tr. 481). Her Zoloft increase had helped and made her "as happy as a lark." (Tr. 481). Her other medications were also working well. (Tr. 481). Plaintiff's medications were adjusted, and labs were ordered. (Tr. 483).

On November 4, 2015, Plaintiff saw Dr. Steven Moon at Neurological Associates for her tremors. (Tr. 325). Clinic notes indicated that Plaintiff's tremors interfered with activities requiring postural control, such as holding things. Plaintiff reported some flinging movements of her arms and legs, but only at night. She also reported an increase in headaches over the last six months. (Tr. 325). Dr. Moon recommended a MRI of the brain as well as a sleep deprived EEG for the tremors, and she was counseled on dietary management. (Tr. 329).

A MRI was performed on Plaintiff's brain on November 11, 2015. (Tr. 367). It showed several punctate T2 hyperintensities "in the subcortical regions bilaterally-these are nonspecific, likely chronic small vessel ischemic changes." (Tr. 367).

On November 17, 2015, Plaintiff returned to Dr. Moon for her tremors. (Tr. 321). Dr. Moon noted that a MRI of Plaintiff's brain revealed some chronic small vessel ischemic changes only and that she was tolerating her medication well.   (Tr. 321). Plaintiff was diagnosed with tremors and obesity. (Tr. 324).

On December 2, 2015, Plaintiff saw Dr. Foster for a medication recheck.  She reported that her troubled relationships with her son caused her anxiety.  (Tr. 486). Plaintiff reported that she was doing well with the medication for her tremors, but that she was still feeling overwhelmed when out in public.  (Tr. 486). Plaintiff told Dr. Foster that she was willing to do therapy if she could get her insurance started. (Tr. 486).

On January 12, 2016, Plaintiff saw Dr. Moon for her tremors.  (Tr. 316).  Plaintiff reported that she was "doing better," but that she was having some tremor when she would write.  Plaintiff also complained of recent memory impairment.  (Tr. 316).  Dr. Moon assessed her with tremor and obesity.  She was referred for a formal neuropsychological evaluation in light of her complaints about her memory, and her medication was adjusted.  She was also instructed on dietary management.  (Tr. 318).

On February 2, 2016, Plaintiff saw Dr. Foster for a medication recheck. Plaintiff was complaining of memory loss, and Dr. Foster referred her for cognitive testing. (Tr. 491). Plaintiff reported that she no longer drives a car and that she still had increased anxiety around a lot of people.  (Tr. 491).  Dr. Moon encouraged her to continue her follow up appointments with Dr. Moon and Dr. Chambers and to stay on her current medication regimen.  (Tr. 493).

On March 10, 2016, Plaintiff underwent a neuropsychological evaluation by Dr. Gene Chambers, Ph.D.  (Tr. 331-333).  Plaintiff reported that her current stress was work-related and

that stress worsened her tremors. (Tr. 331).  Dr. Chambers noted that Plaintiff's test results revealed cognitive inefficiency along with psychological difficulties.  (Tr. 333).  Plaintiff showed impaired processing speed and difficulty to sustain her attention and concentration. Dr. Chambers opined that this would impact her short-term memory functioning and her executive functions.  Additional testing suggested attention deficit hyperactivity disorder and endorsed severe levels of depression and anxiety. (Tr. 333).  Dr. Chambers diagnosed Plaintiff with attention deficient hyperactivity disorder, combined type; major depression; and generalized anxiety disorder. (Tr. 333). He recommended Plaintiff undergo a trial of medicine designed to assist individuals with improving their attention and concentration and thought she could possibly see improvement in her processing speed with the medication.  (Tr. 333).

On March 24, 2016, Plaintiff saw Dr. Moon for complaints of hand tremors.  Dr. Moon's notes indicated that Plaintiff's tremors worsened while on her vacation to South Texas. (Tr. 313).   Plaintiff was assessed with essential tremor and was to continue her prednisone. (Tr. 315).

On March 30, 2016, Plaintiff saw Dr. Foster for a medication check.  (Tr. 496). Plaintiff reported continued memory loss.  (Tr. 496). Plaintiff reported that she was doing quite well with her anxiety and tremors with her medications, other than when she would go out in public. Plaintiff stated that while on a recent vacation, she did well in the room and when "they went off on their own rather than with the quite large group of family and multiple children."  (Tr. 496). She said that crowds seem to be the main trigger for her. (tr. 496). Dr. Foster encouraged Plaintiff to continue her medications and to continue working with Dr. Chambers on her memory concerns.  (Tr. 498).

8

On April 20, 2016, Plaintiff visited First Care with complaints of anxiety and hyperlipidemia; however, Plaintiff reported that functioning was not difficult for her. (Tr. 346). Dr. DeYoung's notes indicated that Plaintiffs hyperlipidemia was mild and stable. (Tr. 346). Plaintiff was assessed with bipolar disorder, anxiety disorder, disorder of lipoprotein metabolism, and obesity. (Tr. 349).

On June 29, 2016, Plaintiff saw Dr. Foster for a medication recheck. (Tr. 501). Plaintiff reported that she was going through a manic phase; she was unable to get things done; and she was unable to sleep through the night. (Tr. 501). Her family reported that she was difficult to be around. (Tr. 501). Dr. Foster encouraged Plaintiff to continue her work with Dr. Chambers, and he adjusted her medication. (Tr. 503).

On July 27, 2016, Plaintiff returned to Dr. Foster for a follow up on her medication. (Tr. 506). Plaintiff reported that her medication was helping her manic episodes, and she reported that she was doing well. (Tr. 506). She stated that her tremors were worse and reported that she would see Dr. Moon in a couple of months for a possible sleep study. (Tr. 506). Dr. Foster suggested that Plaintiff continue on her current medication regimen. (Tr. 508).

On August 5, 2016, Plaintiff had a wellness visit with Dr. DeYoung at First Care in Springdale. (Tr. 342). While there, Plaintiff complained of anxiety and angina. (Tr. 342). She was assessed with Prinzmetal's angina, anxiety, and obesity. (Tr. 344). That day, Dr. DeYoung also completed a Cardiac Assessment. (Tr. 383). In that assessment, Dr. Young indicated that Plaintiff's pain was to the left of her sternum, that it was a sharp pain, that it was not related to exertion, and that it was brought on by anxiety. He noted that the pain was

9

relieved by nitroglycerin, but nothing else. (Tr. 383). Dr. DeYoung noted that Plaintiff had a stress test at Northwest Medical Center, but that he did not have the test results. (Tr. 384).

On September 26, 2016, Plaintiff saw Dr. Moon for a recheck on her hand tremor. (Tr. 527). Plaintiff reported that while she still had some tremor when doing fine work with her hands, the medication was helping. She also reported that she recently had to walk a few miles and that it worsened the pain in her low back and down her legs. (Tr. 527). Dr. Moon adjusted her medication. (Tr. 529).

On October 4, 2016, Dr. Patrick Fields, a non-examining medical consultant, performed a physical RFC assessment, where he determined that Plaintiff was capable of light work. (Tr. 69).

On October 5, 2016, Dr. Abesie Kelly, Ph.D., a non-examining medical consultant, performed a mental RFC assessment, where she determined that Plaintiff was able to perform work where interpersonal contact is routine but superficial, e.g grocery checker; complexity of tasks is learned by experience, several variables, judgment within limits; supervision required is little for routine but detailed for non-routine (semi-skilled). (Tr. 71).

On October 20, 2016, Plaintiff returned to Dr. Foster for a follow up. (Tr. 511). She reported that she continued to have heightened anxiety and depression and short-term memory loss. Her spouse helped her with personal care in the mornings. She said that she rarely left her house and that she refused to participate in therapy due to not feeling comfortable with it. She reported many days where she had feelings of worthlessness, hopelessness and was unsure of her purpose. She stated that "I wouldn't be here without my medicine." (Tr. 511).

10

On November 2, 2016, Plaintiff underwent a neuropsychological update at MindWorks. (Tr. 519). Dr. Gene Chambers reported that in regard to her current test outcomes concerning memory, Plaintiff demonstrated worsening of list learning procedures and the recall of story narrative passages. (Tr. 520). Plaintiffs working memory continued to function in the low average range, and psychologically, she continued to endorse a severe level of anxious and depressive symptoms. (Tr. 520). Dr. Chambers' diagnostic impression was major vascular neurocognitive disorder with behavior disturbance (depression and anxiety). (Tr. 520). He recommended that Plaintiff discuss with her primary care physician a trial of medicine designed to slow down cognitive decline. (Tr. 520).

On November 17, 2016, Plaintiff visited Neurological Associates, where she saw Dr. Moon for her tremor and memory symptoms. (Tr. 524). Plaintiff reported that her memory symptoms were worsening and that her postural tremor was still noticeable. (Tr. 524). Dr. Moon diagnosed Plaintiff with essential tremor and memory loss. He recommended adjusting her medication; encouraged her to take a multivitamin and to eat a well-balanced diet; encouraged her to get regular aerobic exercise; and recommended that she focus on activities that enhanced her cognitive function such as reading and playing tennis. (Tr. 526).

Plaintiff returned to Dr. DeYoung on November 18, 2016, for her hypertension, which was currently stable. (Tr. 533). She was diagnosed with vascular dementia with behavioral disturbance and bipolar disorder. (Tr. 535-536).

On December 12, 2016, Dr. Laurie Clemens, Ph.D., a non-examining medical consultant, performed a mental RFC assessment, where she affirmed Dr. Kelly's previous assessment of semi-skilled work. (Tr. 90).

11

On December 15, 2016, Dr. Robert Redd, a non-examining medical consultant, performed a physical RFC assessment, where he affirmed the previous assessment of light work by Dr. Fields.  (Tr. 88).

Plaintiff saw Dr. Moon again on January 17, 2017, for her tremor.  (Tr. 539).  Dr. Moon's clinic notes indicated that Plaintiff's tremor medication was helping.  Plaintiff denied any new neurological symptoms.  While she had fallen once since she last saw Dr. Moon, she denied impairment of consciousness with the fall.  She was unable to tolerate medication for her cognitive symptoms.  (Tr. 539).  Dr. Moon diagnosed Plaintiff with essential tremor and encouraged her to continue her medication, get regular exercise and to call if her symptoms worsened.  Plaintiff was also diagnosed with obesity and counseled on diet and exercise. (Tr. 541).

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent

positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

## IV.  Discussion:

Plaintiff makes the following arguments on appeal: 1) that the ALJ erred in failing to fully and fairly develop the record; 2) that the ALJ erred in her Step Two determination; and 3) that the ALJ erred in her RFC determination.  (Doc. 11, pp. 1-11).

### A.  Failure to Fully Develop the Record:

The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case.  Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  "Reversal due to failure to develop the record is only warranted where such failure is unfair and prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period.  Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B.  Plaintiff's Impairments:

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe.  See 20 C.F.R. § 404.1520(c).  While "severity is not an onerous requirement for the claimant to meet . . . it is also not a toothless standard."  Wright v.

Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted).    To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities.  See Social Security Ruling 96-3p.  The claimant has the burden of proof of showing he suffers from a medically-severe impairment at Step Two.    See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe.  See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify a particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe'"); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). The Court finds the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant time period.

C.    **Subjective Complaints and Symptom Evaluation:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5)

functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In addressing Plaintiff's credibility, the ALJ noted Plaintiff's report that she would go to her son's softball games and spend time with her spouse, son and in-laws. (Tr. 25). Plaintiff also reported that she was able to wash dishes and fold laundry; to walk a few miles; and to go on a trip to the Texas coast with family. (Tr. 25). The ALJ also noted that Plaintiff reported that she could not deal with people; however, she was able to visit a sick family member, attend a funeral, and go to family gatherings. (Tr. 25). At the hearing, Plaintiff testified before the ALJ that she had to take leave from her job because of a nervous breakdown; that she suffered from tremors in her hands; that she was having numbness in her legs; and that she had anxiety that prevented her from socializing. (Tr. 43-53). Plaintiff also testified that she had trouble with her memory and that she was having pain in her back. (Tr. 48-49).

In a November 15, 2016, Function Report, Plaintiff stated that she cared for her pets; made breakfast occasionally; prepared simple dinners with a slow cooker; cleaned around the house at times; and helped her spouse with laundry and washing dishes. (Tr. 238-240). Plaintiff reported that she did not do much personal care and that her spouse would remind her to bathe. (Tr. 239). Plaintiff reported that she did not drive, but that she would ride in a car, shop on the computer, pay bills, handle a savings account, and use a checkbook. (Tr. 239-

240).  Plaintiff stated that she would go to the doctor on a regular basis; that she could walk 200 feet and rest for 20 minutes; that she could pay attention for ten to fifteen minutes; and that while she did not finish what she started, she could follow written and spoken instructions with assistance. (Tr. 241-243).  Plaintiff reported that she had trouble getting along with others and that it had impacted her job.  (Tr. 243-244).

With respect to Plaintiff's mental impairments, the record demonstrates that Plaintiff was treated conservatively with medication for depression.  Moreover, the record demonstrated that Plaintiff's medication improved her symptoms. Impairments that can be controlled with treatment or medication are not disabling.  See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment controllable with treatment or medication is not considered disabling).

With respect to Plaintiff's mental impairments, doctors recommended psychotherapy as a part of her treatment plan; however, the medical records indicated that Plaintiff refused to attend therapy. See Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004) (citations omitted) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."). 20 C.F.R. § 404.1530(b).

Furthermore, the ALJ considered that Plaintiff worked for approximately fifteen years with her alleged disabling conditions.  Plaintiff testified that she was diagnosed with bipolar disorder and anxiety in 2000; however, a review of her earnings record indicated that she was able to maintain full time employment until 2015.  "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Branson v. Astrue, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010) (citing Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001)). "Working generally demonstrates an ability to perform a substantial

17

gainful activity." <u>Branson v. Astrue</u>, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010) (citing <u>Goff v. Barnhart</u>, 421 F.3d 785, 792 (8th Cir. 2005)). Section 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity.

As for Plaintiff's physical impairments, the record also demonstrates that Plaintiff was treated conservatively with medication and therapy for her tremor, angina and small vessel changes in her brain, as shown by a MRI. Moreover, the record demonstrated that Plaintiff's medication improved her symptoms and that her angina was related to her anxiety. The Court notes that in July of 2015, Plaintiff's EKG was normal, and therefore, Dr. DeYoung treated her anxiety. (Tr. 446). A MRI was performed on November 11, 2015, which showed what was likely some small vessel ischemic changes; however, Dr. Moon noted that Plaintiff was tolerating her medication well. (Tr. 321, 367). Moreover, on numerous occasions in the medical record, Plaintiff reported an improvement in her hand tremor symptoms with medication. (Tr. 496, 527, 539). Plaintiff's doctors also repeatedly counseled her on diet, exercise and for her obesity and general health; although, it does not appear from the record that Plaintiff followed those recommendations.

Although it is clear that Plaintiff suffers some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**D.    ALJ's RFC Determination:**

Plaintiff asserts on appeal that the ALJ erred in his RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is

assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In finding Plaintiff able to perform light work with limitations, the ALJ considered the medical assessments of the non-examining agency medical consultants, the medical assessments of evaluating medical consultants, Plaintiff's subjective complaints, and the medical records. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of treating, examining, and non-examining medical professionals, including the opinions of Drs. DeYoung, Foster, Moon, Chambers, Kelly, Fields, Redd, and Clemens, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff alleges that the ALJ erred in her RFC determination, and specifically, alleges that the ALJ did not consider the impact of her tremor and anxiety in that assessment. (Doc. 11, pp. 1-7). Throughout the relevant time period, Plaintiff saw Drs. Foster and DeYoung for her anxiety. Those medical records indicated that while Plaintiff's medication was often adjusted, the medication often improved her symptoms. Plaintiff's November 11, 2015, MRI showed only some chronic small vessel ischemic changes. (Tr. 367). Dr. Chambers' March 10, 2016, evaluation showed that Plaintiff had cognitive inefficiency along with psychological difficulties and showed impaired processing speed and difficulty to sustain her attention and concentration, which would impact her short-term memory functioning and her executive functions. (Tr. 333). Dr. Chambers diagnosed her with attention deficit hyperactivity disorder, major depression, and generalized anxiety disorder, and recommended she undergo a trial of medication to assist individuals with improving their attention and concentration. (Tr. 333). Dr. Chambers opined that he thought Plaintiff could see improvement in her processing speed with medication. (Tr. 333).

After Plaintiff's evaluation with Dr. Chambers, she returned to Dr. Moon and Dr. Foster, where she reported that she was able to travel to south Texas for vacation. (Tr. 313, 496). Plaintiff specifically told Dr. Foster that while on vacation, she did well when she would venture out on her own with her husband and stayed away from crowds. (Tr. 496).

Dr. Chambers saw Plaintiff again on November 2, 2016, for a neuropsychological update. (Tr. 519). During that evaluation, Dr. Chambers opined that Plaintiff demonstrated a worsening of list learning procedures and the recall of story narrative passages. (Tr. 520). He also noted that Plaintiff's working memory continued to function in the low average range. Dr. Chambers' impression was major vascular neurocognitive disorder with behavior

disturbance (anxiety and depression).  He recommended that Plaintiff see her primary care physician and undergo a trial of medicine designed to slow down cognitive decline.  (Tr. 520).

At a follow up appointment with Dr. Moon, he recommended adjusting her medication; encouraged her to take a multivitamin and to eat a well-balanced diet; encouraged her to get regular aerobic exercise; and recommended that she focus on activities that enhanced her cognitive function such as reading and playing tennis.  (Tr. 526). When Plaintiff returned to Dr. Moon on January 17, 2017, Dr.  Moon's clinic notes indicated that Plaintiff's tremor medication was helping, and Plaintiff denied any new neurological symptoms.  His notes indicated that Plaintiff was unable to tolerate medication for her cognitive symptoms; however, Dr. Moon's recommendations were only to encourage her to continue her medication, get regular exercise, improve her diet, and increase her exercise. (Tr. 539, 541).  Despite doctor recommendations, Plaintiff also declined mental health counseling therapy.

Furthermore, in October and December of 2016, both Dr. Fields and Dr. Redd determined that Plaintiff was capable of light work with no restrictions. (Tr. 69, 88).  Also, Dr. Kelly and Dr. Clemens both examined the record and determined that Plaintiff was capable of performing work where interpersonal contact is routine but superficial, e.g grocery checker; complexity of tasks is learned by experience, several variables, judgment within limits; supervision required is little for routine but detailed for non-routine.  (Tr. 71, 90).

The ALJ considered the opinions of the examining and non-examining physicians and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d

1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff's subjective complaints were also inconsistent with evidence regarding her daily activities. The record showed Plaintiff was able to take a trip to South Texas for vacation, care for her pets, make breakfast occasionally, prepare simple dinners with a slow cooker, clean around the house at times, and help her spouse with laundry and washing dishes.  (Tr. 238-240).  This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disability. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store).

The ALJ also took Plaintiff's obesity into account when determining that Plaintiff could perform light work with limitations.  Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

Upon careful review of the record, the Court finds that there was substantial evidence to support the ALJ's RFC determination of light work with limitations.

**E.    Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005); see also Smith v. Colvin, 756 F.3d 621, 627 (8th Cir. 2014) (concluding that the ALJ properly phrased the hypothetical to

the vocational expert, recognizing that a hypothetical need only include impairments that the ALJ finds credible). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a housekeeping cleaner and an apparel stock checker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V. Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of April, 2019.


/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE